Florence R. LACY–McKINNEY,
Appellant–Defendant,

v.

TAYLOR, BEAN & WHITAKER
MORTGAGE CORP.,
Appellee–Plaintiff.

No. 71A03–0912–CV–587.

Court of Appeals of Indiana.

Nov. 19, 2010.

Joseph F. Zielinski, Indiana Legal Services, Inc., South Bend, IN, Attorney for Appellant.

Craig D. Doyle, Mark R. Galliher, Amanda J. Maxwell, Doyle Legal Corporation, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Florence R. Lacy–McKinney ("Lacy–McKinney") appeals the trial court's entry of summary judgment in favor of Taylor, Bean & Whitaker Mortgage Corp. ("Taylor–Bean") on Taylor–Bean's action to foreclose on Lacy–McKinney's mortgage that was insured by the Federal Housing Administration ("FHA").[1] On appeal, Lacy–McKinney raises two issues that we restate as:

I. Whether a mortgagee's compliance with federal mortgage servicing responsibilities is a condition precedent that may be raised as an affirmative defense to the foreclosure of an FHA-insured mortgage; and

II. Whether the trial court erred when it entered summary judgment in favor of Taylor–Bean on its mortgage foreclosure action against Lacy–McKinney.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Lacy–McKinney, the non-moving party, reveal that she purchased a home on Manchester Drive in South Bend, Indiana (the "Property") in January 2007. Lacy–McKinney financed the Property via an FHA-insured mortgage with Liberty Mortgage Inc. Lacy–McKinney's loan was subsequently transferred to GMAC Mortgage. Newport Shores Mortgage, Inc. solicited Lacy–McKinney to refinance her loan. This solicitation by Newport Shores, acting as a loan broker, led to Lacy–McKinney's loan

---

1. A footnote in Appellee's Brief states that the loan between Lacy–McKinney and Taylor–Bean was subsequently sold and assigned to BAC Home Loans Servicing, LP. *Appellee's* *Br.* at 1 n. 1. In keeping with the approach of the parties, we will continue to refer to the lender/mortgagee as Taylor–Bean.

with Taylor–Bean that is the subject of these foreclosure proceedings.

On September 19, 2007, Lacy–McKinney entered into a note ("Note") with Taylor–Bean, which was secured by the mortgage that is the subject of this foreclosure action ("Mortgage"). The loan with Taylor–Bean was an FHA-insured loan subject to federal statutes and the regulations of the United States Department of Housing and Urban Development ("HUD").[2]

The Note and Mortgage each placed certain limitations on Taylor–Bean's ability to require Lacy–McKinney to immediately pay the Note in full in the event of Lacy–McKinney's default. Section 6(B) of the Note, in pertinent part, provided:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, *except as limited by regulations of the Secretary* in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.... *In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations.* As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

*Appellant's App.* at 23 (emphasis added). Section 9 of the Mortgage addressed grounds for acceleration of the debt and, in pertinent part, provided:

> (a) Default. Lender may, *except as limited by regulations issued by the Secretary* in the case of payment defaults require immediate payment in full

of all sums secured by this Security Instrument if [borrower defaults]....

. . .

> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. *This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.*

*Id.* at 28 (emphasis added).

Taylor–Bean received Lacy–McKinney's first loan payment on November 15, 2007. *Appellee's App.* at 55. Her 2008 payments were received by Taylor–Bean on January 31, February 15, March 17, April 17, May 21, and June 27. *Id.* at 55–56. Each payment, however, was credited to the prior month because Taylor–Bean had no record of having received Lacy–McKinney's December 2007 payment.

Taylor–Bean maintained a record called the Mortgage Servicer System Memo Report ("System Report"), in which it recorded all communications and other actions taken in connection with Lacy–McKinney's Mortgage. *Appellant's App.* at 211–21. The System Report revealed that Taylor–Bean sent Lacy–McKinney a telephonic "automated dialer reminder" each month that her payment was late. *Id.* Additionally, starting on January 14, 2008, Taylor–Bean sent numerous form letters. *Id.* Some of these letters informed Lacy–McKinney as to the amount she owed for overdue mortgage payments plus late charges and included a HUD pamphlet entitled, "How to Avoid Foreclosure," while others reminded Lacy–McKinney of the overdue payments and urged her to

---

2. For clarity, we will hereinafter refer to a loan and mortgage issued by an FHA approved lender as a HUD-insured mortgage.

call the Taylor–Bean office in order to "discuss this matter at length." *Appellee's App.* at 33–41. On March 12, 2008, Lacy–McKinney called Taylor–Bean to inform the company that she had mailed her March payment in the amount of $780.00, and she was told that the payment would be applied to February because Taylor–Bean had not received the December 2007 payment. *Appellant's App.* at 213.

As part of its May 14, 2008 System Report entry, Taylor–Bean made the following notation: "Loss Mitigation Referral sent to imaging." *Id.* at 215. Loss mitigation is a servicing responsibility that requires HUD lenders, like Taylor–Bean, to take actions "which can reasonably be expected to generate the smallest financial loss to HUD." 24 C.F.R. § 203.501. On May 21, 2008, Lacy–McKinney made a mortgage payment; following this payment, Lacy–McKinney was one month behind on her Mortgage. *Appellee's App.* at 56.

During a May 28, 2008 telephone call, Lacy–McKinney inquired as to the status of her loss mitigation package. *Appellant's App.* at 215. The System Report noted that her call was transferred to Loren Cline ("Cline"), but there was no notation of Cline's response. *Id.* Again, on June 18, 2008, Lacy–McKinney called Taylor–Bean to report that she was employed as a school bus driver, did not get paid in June or July, and would need some assistance with her loan. *Id.* at 216. Lacy–McKinney's job as a bus driver was the same one she had held when Taylor–Bean refinanced her loan on September 19, 2007. The call was again transferred to Cline, and again, the System Report contained no notation of Cline's response. *Id.*

Almost three weeks later, on July 7, 2008, Cline returned Lacy–McKinney's call. · *Id.* At this point in time, Lacy–McKinney was two months behind on her Mortgage. Cline informed Lacy–McKinney that her file still had not been reviewed. *Id.* Lacy–McKinney informed Cline that a new school year would start in August and that she did not think she would have the funds to make a payment in July. *Id.* Cline advised Lacy–McKinney that her file would be reviewed and that, if Lacy–McKinney had not heard from her in two weeks (around July 21, 2008), Lacy–McKinney should call Cline. *Id.* Although Lacy–McKinney made her June 2008 payment, which was applied to May, she was unable to make a mortgage payment for July 2008. *Appellee's App.* at 56. By affidavit, Lacy–McKinney testified that she "attempted to make partial payments, which were refused." *Appellant's App.* at 66.

As of August 1, 2008, Lacy–McKinney was three months behind in her Mortgage. On August 6, 2008, more than two months after Lacy–McKinney had inquired as to the status of her loss mitigation package, Cline made the following notes in the System Report:

> RFD [3]: temp loss of daughter's SS income due to her being sent to girl's school, SSI suspended until she returns home, hardship ltr does not state when she will retn, income ver in file is not consistent so need to rvw w borr, also need to go over some expenses, using higher net pay & expenses as listed borr has $528 deficit, loan currently due for 3 pmts.

*Appellant's App.* at 217 (abbreviations in original). That same day, Cline also made a notation "left message w daughter(?)."

---

**3.** RFD appears to be an abbreviation for the phrases, reason for delay or reason for delinquency.

*Id.* One week later, on August 13, 2008, Cline made the following notation in the System Report:

> tt [talked to] Mrs, went over fin info, her car is currently broke[sic] down, gets ride from friend & helps pay for gas, just started back to work yesterday (school bus driver), & won't get 1st pyck until 8/22, won't be able to make full pmt this mo, says normal net pay is higher amt as shown on pystb, prev had other garnishment, daughter has been away at the school for 2 yrs, is due back in court next mo & she expects daughter to be returned home within couple mos so would then have addtl SS income of approx $600 mo, based on current fin info borrow has $528 deficit, due for 3 pmts, I adv does not qual for retention option due to deficit, adv if she can get letter from atty to ver status of daughter & send ver of SS amt that I will see if can do anything, adv to fax info by Fri & I will call her back, otherwise file will be closed & if situation changes she can submit updated info at later time.

*Id.* (abbreviations in original).

On August 15, 2008, a System Report entry noted, "Borrower called wanted Cline fax number gave it to her." *Id.* Cline's September 4, 2008 entry noted:

> rcvd fax-called borr
>
> rcvd ltr from borr arty stating that they are trying to get daughter retd home, also rcvd '06 ver of SS amt, even with the SS (if daughter comes home) the borr still would have small deficit without the SS she has $536.91 deficit, which also only includes minimal fuel expense since car is currently not working / called Ms, adv does not qual for retention option at this time due to deficit, she does not want to sell prop, I adv need addtl income in household, adv can resubmit if situation changes, she did not understand why doesn't qual, said

she has same income as when she got mtg loan.

*Id.* (abbreviations in original). Finally, on September 25, 2008, a Taylor–Bean employee, Jeanna Holt, made the following entry into the System Report:

> Called Hp# [home phone number] Disconnected—Called Cell# talked to borr in reference to finances—borr is a bus driver borr said she has just gone back to work after being off for 3 months daughter will be coming back to live with her and she receives SSI income—advised borr to resubmit financial worksheet to Loren [Cline] asap with all income sources and proofs—sending financial worksheet. . . .

*Id.* at 50 (abbreviations in original).

The System Report reveals that numerous telephone conversations took place between Taylor–Bean and Lacy–McKinney. Taylor–Bean concedes, however, that it never held a face-to-face meeting with Lacy–McKinney prior to filing its complaint to foreclose on October 3, 2008. *Appellant's App.* at 152. In its complaint, and again in its amended complaint, Taylor–Bean alleged that Lacy–McKinney executed the Note and Mortgage and

> [t]he payments due Taylor, Bean have not been paid according to the terms of the Note and Mortgage. By reason of said default, Taylor, Bean exercised its option under the Note and Mortgage to declare the whole indebtedness due and payable. Notice of acceleration was given to the Defendant Florence R. Lacy–McKinney and *any and all conditions precedent have been performed in accordance with the terms of the Note and Mortgage.*

*Appellant's App.* at 2, 18.

On November 13, 2008, Lacy–McKinney filed an Answer to Complaint for Foreclosure, raising the following affirmative de-

fenses: (1) plaintiff has failed to state a cause of action upon which relief can be granted because it does not have a security interest in Property;[4] (2) foreclosure is an equitable proceeding that is not available to Taylor–Bean who has unclean hands because it violated the Truth in Lending Act ("TILA") and failed to mitigate its damages; (3) Taylor–Bean has refused partial payment in violation of HUD regulation 24 C.F.R. § 203.556; (4) Taylor–Bean did not satisfy HUD regulation 24 C.F.R. § 203.604(b), which requires a face-to-face meeting with the mortgagor prior to filing a complaint for foreclosure; and (5) Lacy–McKinney has a right under TILA to rescind the Mortgage loan because Taylor–Bean failed to provide her with two copies of the Notice of Right to Cancel.

On December 11, 2008, Taylor–Bean filed its motion for summary judgment and brief in support of the motion. Following a hearing, the trial court ordered the parties to participate in a settlement conference. On September 18, 2009, the parties advised the trial court that they had been unsuccessful in their efforts to reach a settlement. *Id.* at 175. Thereafter, the parties requested a ruling "on plaintiff's motion for summary judgment as heard on June 17, 2009." *Id.* at 175, 224. In "Report of Magistrate and Order," the trial court found "that Plaintiff's Motion for Summary Judgment should be granted." *Id.* at 135. On October 15, 2009, the trial court adopted verbatim Taylor–Bean's proposed summary judgment and decree of foreclosure and reformation of legal de-

scription. Neither the "Report of Magistrate" nor the trial court's order stated findings of fact or conclusions thereon. The CCS entry reflecting the Order provided as follows:

> Plaintiff files proposed summary judgment and decree of foreclosure and reformation of legal description. Granted per form of order. Judgment in rem entered in favor of plaintiff and against defendant in the sum of $94,036.91 plus costs of this action and per diem interest of $17.94 per day from October 30, 2008 until judgment and post-judgment interest thereafter at the rate of 7.375 percent per annum.

*Id.* at 224. Lacy–McKinney now appeals. Additional facts will be added where pertinent.

## DISCUSSION AND DECISION

### I. Standard of Review

■■■■ When reviewing a trial court's grant of summary judgment, we apply the same standard as that of the trial court. *Beatty v. LaFountaine,* 896 N.E.2d 16, 19–20 (Ind.Ct.App.2008), *trans. denied.* Summary judgment is appropriate if the pleadings and evidence submitted demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Jacobs v. Hilliard,* 829 N.E.2d 629, 632 (Ind.Ct.App.2005), *trans. denied.* We construe the pleadings, affidavits, and designated evidence in the light most favorable to the non-moving party, and the moving party has the burden of

---

4. At the time Taylor–Bean filed its complaint, the security interest in the subject mortgage was in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") "(solely as nominee for [Taylor–Bean] ... and [Taylor–Bean's] successors and assigns)." *Appellant's App.* at 8. After MERS assigned the security interest to Taylor–Bean, Taylor–Bean filed an amended complaint. Lacy–McKinney initially argued that summary judgment in favor of Taylor–Bean must fail because Taylor–Bean had no interest in the Property at the time the original complaint was filed. *Id.* at 102–03. Lacy–McKinney does not raise this issue on appeal.

demonstrating the absence of a genuine issue of material fact. *Beatty,* 896 N.E.2d at 20; *Wilson v. Royal Motor Sales, Inc.,* 812 N.E.2d 133, 135 (Ind.Ct.App.2004). Because a trial court's grant of summary judgment comes to us clothed with a presumption of validity, the appellant must persuade us that error occurred. *Beatty,* 896 N.E.2d at 20. If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Irwin Mort. Corp. v. Marion County Treasurer,* 816 N.E.2d 439, 442 (Ind.Ct.App.2004). Even so, we must carefully review a grant of summary judgment in order to ensure that a party was not improperly denied his or her day in court. *Smither v. Asset Acceptance, LLC,* 919 N.E.2d 1153, 1156 (Ind.Ct.App.2010) (citing *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003)).

## II. Noncompliance with HUD Regulations as an Affirmative Defense

In this mortgage foreclosure action, Taylor–Bean moved for summary judgment on its complaint against Lacy–McKinney. Lacy–McKinney admitted that she entered into the Note and the Mortgage with Taylor–Bean and that she was behind in her payments, yet argued that affirmative defenses precluded summary judgment. On appeal, she contends that the trial court erred in granting summary judgment in favor of Taylor–Bean both as a matter of law and because there are genuine issues of material fact that preclude summary judgment.

Lacy–McKinney claims that Taylor–Bean's motion for summary judgment cannot succeed because Taylor–Bean failed to comply with HUD regulations that are conditions precedent to commencing a foreclosure action. Specifically, she maintains that Taylor–Bean: (1) did not engage in loss mitigation in a timely fashion as required by 24 C.F.R. § 203.605(a); (2) did not have a face-to-face meeting or make a reasonable effort to have a face-to-face meeting "before three full monthly installments due on the [M]ortgage [were] unpaid" as required by 24 C.F.R. § 203.604(b); and (c) did not accept partial payments as required by 24 C.F.R. § 203.556. *Appellant's Br.* at 10, 22. Taylor–Bean responds that the regulations at issue address only the relationship between the mortgagee and the government. Taylor–Bean thus argues that summary judgment was appropriate as a matter of law because there is no basis for finding that Congress intended that these regulations be used by a mortgagor either as a private right of action or as a defense. *Appellee's Br.* at 19. Additionally, Taylor–Bean argues that, even if these regulations create a condition precedent to the filing of a foreclosure action, Lacy–McKinney has failed to raise a genuine issue of material fact that Taylor–Bean has not complied with these conditions precedent.[5]

The primary issue of law presented in this case is: of what legal significance are the HUD regulations as to the right of a mortgagee to foreclose on a HUD-insured mortgage. In other words, are the HUD regulations binding conditions precedent that must be complied with before a mortgagee has the right to foreclose on a HUD property, such that Lacy–McKinney's claim of noncompliance can be used as an

---

5. As we discuss below, in an Indiana motion for summary judgment, the defendant/non-movant does not have the burden to prove that the plaintiff/movant has not complied with the affirmative defense. Instead, the burden falls to the movant to prove that there is no genuine issue of material fact that the affirmative defense does not apply.

affirmative defense? [6]

Surprisingly, this is an issue of first impression in Indiana. Therefore, we provide the following background regarding HUD-insured mortgages. The FHA, which was created by the National Housing Act of 1934, "is the largest government insurer of mortgages in the world." http://portal.hud.gov (last visited Oct. 14, 2010); http://www.huduser.org (last visited Oct. 14, 2010). The FHA, which is a part of HUD, provides mortgage insurance on single-family, multifamily, manufactured homes, and hospital loans made by FHA-approved lenders throughout the United States and its territories. http://portal.hud.gov (last visited Oct. 14, 2010). Under this program, mortgagee/lenders are induced to make essentially risk-free mortgages by being guaranteed against loss in the event of default by the mortgagor. *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 701 F.2d 112, 113–14 (10th Cir.1983). This program allows mortgagees to offer loans to low-income families at a more favorable rate than would otherwise be available in the market. *Id.* The availability of affordable mortgages, in turn, promotes Congress's "national goal" of "a decent home and suitable living environment for every American family." 12 U.S.C. § 1701t

Pursuant to the authority conferred by Congress, HUD promulgated regulations pertaining to HUD-insured mortgages. The regulations regarding a mortgagee's servicing responsibilities of such mortgages are codified in Title 24, Part 203 (Single Family Mortgage Insurance), Subpart C (Servicing Responsibilities) ("Subpart C") of the Code of Federal Regulations ("CFR"). 24 C.F.R. §§ 203.500–.681. Subpart C contains mortgagee servicing responsibilities and also provides certain re-

lief for the mortgagor, *e.g.*, "conditions of special forbearance," 24 C.F.R. § 203.614, "mortgage modification.," 24 C.F.R. § 203.616, and a requirement that "[c]ollection techniques must be adapted to individual differences in mortgagors and take account of the circumstances peculiar to each mortgagor," 24 C.F.R. § 203.600.

A mortgagee who participates in this HUD program must comply with the servicing responsibilities set forth in Subpart C. One of Subpart C's requirements, which is pertinent to this appeal, mandates that a mortgagee must initiate face-to-face contact with the mortgagor prior to foreclosure. 24 C.F.R. § 203.604. This section provides in part:

(b) The mortgagee must have a face-to-face interview with the mortgagor, or make reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced....

(c) A face-to-face meeting is not required if:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

---

**6.** The condition precedent in this case does not affect the validity of the mortgage, but instead, concerns whether or not Taylor–Bean

has a right, at this juncture, to foreclose on the mortgage.

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

24 C.F.R. § 203.604(b), (c).

Subpart C also requires:

Before four full monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all of the loss mitigation techniques provided at § 203.501 . . . .

24 C.F.R. § 203.605(a). Finally, Subpart C requires a mortgagee to accept any partial payment from the mortgagor and,

either apply it to the mortgagor's account or identify it with the mortgagor's account and hold it in a trust account pending disposition. When partial payments held for disposition aggregate a full monthly installment they shall be applied to the mortgagor's account, thus advancing the date of the oldest unpaid installment but not the date on which the account first became delinquent.[7]

24 C.F.R. § 203.556(b). "It is the intent of the Department [HUD] that no mortgagee shall commence foreclosure or acquire title to a property *until the requirements of this subpart [C] have been followed.*" 24 C.F.R. § 203.500 (emphasis added).

The rationale for allowing noncompliance with HUD servicing responsibilities to be used as an affirmative defense to foreclosure on an HUD-insured mortgage was set forth by the Illinois Appellate Court in *Bankers Life Co. v. Denton*, 120 Ill.App.3d 576, 76 Ill.Dec. 64, 458 N.E.2d

203 (1983). There, a mortgagee filed a complaint seeking to foreclose on the Dentons' HUD-insured mortgage, which was in default. *Denton*, 76 Ill.Dec. 64, 458 N.E.2d at 206. In their answer, the Dentons raised the mortgagee's noncompliance with the HUD servicing responsibilities as an affirmative defense. *Id.* The trial court granted mortgagee's motion to strike the Dentons' affirmative defense and entered a judgment of foreclosure and sale against the Dentons. The Dentons appealed, contending that they could use noncompliance of HUD regulations as an affirmative defense to the foreclosure.

After citing to the applicable mortgage servicing responsibilities, which included the requirement of a face-to-face meeting, the *Denton* court noted:

It is evident from the language of the servicing regulations that the mortgagee must comply with these provisions prior to the commencement of a foreclosure proceeding. Therefore, . . . we believe that the failure to comply with these servicing regulations which are mandatory and have the force and effect of law can be raised in a foreclosure proceeding as an affirmative defense.

While it is true that 24 C.F.R. 203.500 provides that a pattern of refusal or failure to comply with the servicing requirements will be cause for withdrawal of a mortgagee's approval to participate in the federal mortgage insurance program, we do not believe this to be an adequate remedy for the individual mortgagor. The legislative purpose of the National Housing Act . . . is to assist in providing a decent home and a suitable living environment for every American family. Thus, the primary benefi-

---

**7.** This section also sets forth circumstances under which the mortgagor has the right to return a partial payment with a letter of explanation as to why the partial payment is not

being accepted. See 24 C.F.R. § 203.556(c), (d). Neither party refers to the existence of such a letter from Taylor–Bean to Lacy–McKinney.

ciaries of the act and its implementing regulations are those receiving assistance through its various housing programs. This would include the defendant as mortgagors of a H.U.D. insured mortgage.

Therefore, in order to effectively insure that the interests of the primary beneficiaries of the H.U.D. mortgage servicing requirements are being protected, mortgagors must be allowed to raise noncompliance with the servicing requirements as a defense to a foreclosure action. H.U.D.'s withdrawal of a mortgagee's approval to participate in the mortgage insurance program after repeated violations of the servicing requirements is a useless remedy for the individual faced with the immediate problem of the foreclosure action; an action which could possibly be avoided by ... further efforts to arrange a revised payment plan.

*Id.* 76 Ill.Dec. 64, 458 N.E.2d at 205.

The mortgagee's argument against allowing HUD servicing responsibilities to be used by the Dentons as an affirmative defense to foreclosure was that such defenses "are in essence implied remedies and, thus, must meet the requirements of *Cort v. Ash,* [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) ], regarding the implication of a private cause of action from statutory provisions which do not expressly provide for such action." *Denton,* 76 Ill.Dec. 64, 458 N.E.2d at 205. In reversing the trial court's dismissal of the Dentons' affirmative defense, the *Denton* court made the following distinction:

We do not believe that the requirements of *Cort* are applicable to the instant case. *Cort* dealt with the implication of a private cause of action involving the substantive rights of a corporate shareholder. Here, we have procedural requirements presented by way of affirmative defenses, namely, the prerequisites to filing a foreclosure action involving a federally insured mortgage. The defendants are not requesting the court to fashion a remedy or award money damages. The defendants are merely asking the court by the assertion of their affirmative defenses to bar the foreclosure action so that the mortgagee can comply with the H.U.D. mortgage servicing requirements.

*Id.* 76 Ill.Dec. 64, 458 N.E.2d at 206.

As additional support for its position that noncompliance cannot be used as an affirmative defense, Taylor–Bean cites to *Roberts v. Cameron–Brown Co.,* 556 F.2d 356 (5th Cir.1977). *Appellee's Br.* at 21. There, the mortgagor cited noncompliance with the policy guidelines set forth in the HUD Handbook as a defense to foreclosure on an HUD-insured mortgage. At that time, the contact requirement of a face-to-face meeting had not yet been published in the Federal Register and the CFR. The trial court rejected Roberts's use of the guidelines as a defense stating that the government did not publish the Handbook, thus prohibiting it from having the force and effect of law. *Roberts,* 556 F.2d at 361. Like the court in *Denton,* we find that *Roberts* is not controlling in this case for the following reasons:

Since *Roberts* was decided, the mortgage servicing requirements contained in the Handbook have been published in the Federal Register and The Code of Federal Regulations giving them the force and effect of law. Because of this fact, the precedential value of the *Roberts* case has been considerably lessened. Furthermore, *Roberts* dealt with the implication of a private cause of action and not with the assertion of an affirmative defense. Therefore, we believe that the holding in *Roberts* is not controlling in the case at hand.

*Denton,* 76 Ill.Dec. 64, 458 N.E.2d at 206.

Following reasoning similar to that found in *Denton,* the states of Florida,

Maryland, and New York have likewise held that HUD servicing responsibilities may be raised as an affirmative defense in foreclosure actions even though the regulations do not create a private right of action. *See Cross v. Fed. Nat'l Mort. Ass'n*, 359 So.2d 464 (Fla.Dist.Ct.App.1978) (mortgagee's failure to provide defaulted HUD-insured mortgagor with notice required under mortgage servicing regulations was affirmative defense that precluded summary judgment in favor of mortgagee); *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 922 A.2d 538, 547 (2007) (mortgagor may not wield HUD regulations as sword but may assert regulatory noncompliance as shield to foreclosure on HUD mortgage); *Federal Nat'l Mortg. Ass'n v. Ricks*, 83 Misc.2d 814, 372 N.Y.S.2d 485, 497 (N.Y.Sup.Ct. 1975) (mortgagors may interpose as first defense, failure of mortgagee to comply with provisions of HUD Handbook).

Some courts have styled a mortgagee's noncompliance with HUD regulations as an equitable defense (unclean hands and failure to do equity). *See e.g., Heritage Bank, N.A. v. Ruh*, 191 N.J.Super. 53, 465 A.2d 547 (1983) (courts may exercise equity power in refusing to grant foreclosures when mortgagees have flagrantly disregarded forbearance or casting); *Fleet Real Estate Funding Corp. v. Smith*, 366 Pa.Super. 116, 530 A.2d 919 (1987) (summary judgment in favor of mortgagee reversed upon finding that court could exercise equity powers to restrict foreclosure by mortgagee who had not followed or applied forbearance provisions of the HUD regulations and Handbook). We find it problematic to treat such noncompliance merely as an equitable remedy. If noncompliance with HUD regulations is merely "unclean hands," a court may be precluded from requiring compliance in cases where the mortgagor is also deemed to have unclean hands. *See Ruh*, 465 A.2d at 558 (court of

equity, fulfilling reasons and objects for its existence may, in furtherance of natural justice, aid one who is comparatively more innocent). Hence, the equitable approach is limited in its ability to promote a mortgagee's compliance with HUD regulations. Instead, we agree with the reasoning of *Denton* and view the affirmative defense of noncompliance with HUD regulations as the failure of the mortgagee to satisfy a HUD-imposed condition precedent to foreclosure.

To hold that compliance with these regulations is not an affirmative defense, as *Taylor–Bean* suggests, would circumvent the public policy of HUD. The New Jersey Superior Court described this policy as follows:

Families who receive HUD-insured mortgages do not meet the standards required for conventional mortgages. It would be senseless to create a program to aid families for whom homeownership would otherwise be impossible without promulgating mandatory regulations for HUD-approved mortgagees to insure that objectives of the HUD program are met. Foreseeable obstacles to these families' maintaining regular payments, such as temporary illness, unemployment or poor financial management, should be handled with a combination of understanding and efficiency by mortgagees or servicers. Poor servicing techniques such as computerized form letters and unrealistic forbearance agreements as were used by Associated defeat the purpose of the National Housing Act and the HUD program. The prevention of foreclosure in HUD mortgages wherever possible is essential. The HUD program's objectives cannot be attained if HUD's involvement begins and ends with the purchase of the home and the receipt of a mortgage by a low-income family. *Id.*

*Associated E. Mortg. Co. v. Young,* 163 N.J.Super. 315, 394 A.2d 899, 906 (1978).

The above precedents, the language of the HUD regulations, and the public policy of HUD persuade us that the HUD servicing responsibilities at issue in this case are binding conditions precedent that must be complied with before a mortgagee has the right to foreclose on a HUD property. As such, Lacy–McKinney can properly raise as an affirmative defense that Taylor–Bean failed to comply with the HUD servicing regulations prior to commencing this foreclosure action.

## III. Summary Judgment

■ Finding as we do that noncompliance with the HUD servicing responsibilities can be raised as an affirmative defense, we must now address whether in this case the designated evidence supports the trial court's grant of summary judgment in favor of Taylor–Bean. As part of its brief in support of its motion for summary judgment, Taylor–Bean acknowledged Lacy–McKinney's affirmative defenses, yet noted, in pertinent part, as follows:

Despite these affirmative defenses put forth by Defendant, no genuine issue of material fact exists. Plaintiff states the following in response to Defendant's affirmative defenses to show there is no genuine issue of material fact.

(1) Trial Rule 56(E), as previously stated above, requires each party to set forth by affidavit of [sic] otherwise, specific facts to show a genuine issue of material fact for trial. *Defendant has not filed any affidavit nor offered any specific evidence of material fact to rebut Plaintiff's complaint.*

. . . .

(4) Defendant argues Plaintiff violated 24 C.F.R. § 203.556 when it refused partial payments.

(a) *Defendant offers no evidence or other affidavit and cannot create an issue of material fact by mere allegation.*

(b) Under 24 C.F.R. § 203.556(d) once a mortgage is in default, a partial payment may be returned to the mortgagor with a letter of explanation in certain circumstances. Plaintiff lender did not violate Regulation Z (Federal Truth in Lending Act) by returning partial payments.

(5) Defendant argues Plaintiff violated 24 C.F.R. § 203.604(b) by failing to have a face-to-face meeting with the debtor. Defendant fails to mention 24 C.F.R. § 203.604(c)(2) which exempts a mortgagee from the face-to-face meeting where the mortgaged property is not within 200 miles of the mortgagee. In the instant case, the mortgaged property is in St. Joseph County, Indiana[,] the mortgage [sic] is a business authorized under the laws of the State of Florida. Florida is more than 200 miles from the mortgaged property and the mortgagee is thus exempt from the face-to-face meeting.

. . . .

*Appellant's App.* at 54–55 (emphasis added).

As part of her designated evidence, Lacy–McKinney included Taylor–Bean's responses to her request for admissions, which contained the following admissions by Taylor–Bean:

3. That the loan at issue is [a] Federal Housing Administration ("FHA") Loan subject to the regulations of the U.S. Department of Housing and Urban Development ("HUD").

ANSWER: Admit.

4. That [Taylor–Bean] did not accept partial payments from the Defendant.

ANSWER: Admit. Plaintiff asserts it is exempt from this requirement under the argument asserted in its Brief in Support of Motion for Summary Judgment.

5. That [Taylor–Bean] did not provide loss mitigation options to Defendant prior to instituting the foreclosure action presently before the Court.

ANSWER: Plaintiff is without knowledge sufficient to answer the question beyond the allegations asserted in Plaintiff's Complaint. Plaintiff, by counsel, respectfully requests a 30–day extension up to and including February 9, 2009, to respond to this discovery request.

6. The face-to-face meeting was not held between [Taylor–Bean] and the Defendant prior to the Complaint at issue being filed.

ANSWER: Admit.

7. That [Taylor–Bean] did not exert reasonable effort to arrange a face-to-face meeting with Defendant.

ANSWER: Plaintiff is without knowledge sufficient to answer the question beyond the allegations asserted in Plaintiff's Complaint. Plaintiff, by counsel, respectfully requests a 30–day extension up to and including February 9, 2009, to respond to this discovery request.

8. That the mortgaged property is within two hundred (200) miles of a [Taylor–Bean] branch or service center.

ANSWER: Plaintiff is without knowledge sufficient to answer the question beyond the allegations asserted in Plaintiff's Complaint. Plaintiff, by counsel, respectfully requests a 30–day extension up to and including February 9, 2009, to respond to this discovery request.

9. That [Taylor–Bean] did not follow the required pre-foreclosure steps for servicers of FHA Loans.

ANSWER: Plaintiff is without knowledge sufficient to answer the question beyond the allegations asserted in Plaintiff's Complaint. Plaintiff, by counsel, respectfully requests a 30–day extension up to and including February 9, 2009, to respond to this discovery request.

*Id.* at 82–83. Taylor–Bean filed no additional responses to recovery. Lacy–McKinney also designated to the trial court a list of the Taylor–Bean offices, which revealed an office located in Oakbrook, Illinois—a location that was within 200 miles of the Property. *Id.* at 67.

On January 6, 2009, Lacy–McKinney filed defendant's memorandum in response to Taylor–Bean's motion for summary judgment, in which she admitted that she had refinanced her Property with Taylor–Bean, had entered into the Note and mortgage, and had fallen behind on her payments. *Id.* at 88–90. Notwithstanding these admissions, Lacy–McKinney maintained that because the Note and mortgage did "not authorize acceleration [of payments on a defaulted loan] when not permitted by HUD Regulations," there remained a genuine issue of material fact as to whether Taylor–Bean had complied with the conditions precedent to foreclosure. *Id.* at 89–90. We agree.

This case illustrates once again the marked difference in summary judgment procedure in Indiana as compared to federal practice. *Cole v. Gohmann,* 727 N.E.2d 1111, 1113 (Ind.Ct.App.2000). Federal summary judgment procedure requires summary judgment to be granted against a party who fails to establish an essential element of that party's case as to which that party bears the burden of proof at trial. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In contrast, under Indiana procedure, the party moving for summary judgment has the burden of es-

tablishing that no genuine issue of material fact exists. *Schmidt v. Am. Trailer Court, Inc.*, 721 N.E.2d 1251, 1253, (Ind.Ct.App. 1999), *trans. denied* (2000) (citing *Jarboe v. Landmark Cmty. Newspapers*, 644 N.E.2d 118, 123 (Ind.1994)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, *Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1313 (Ind.1983), or if the undisputed material facts support conflicting reasonable inferences, *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 285 (Ind.1991)." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind.2009). Only after the moving party has met this burden with a prima facie showing that no genuine issue of material fact exists does the burden then shift to the non-moving party to establish that a genuine issue of material fact does in fact exist. *Id.*

Here, Taylor–Bean is both the plaintiff and the movant for summary judgment in this foreclosure action. As such, we must draw all reasonable inferences in favor of Lacy–McKinney, the non-moving party. Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). In her answer to Taylor–Bean's complaint, Lacy–McKinney alerted Taylor–Bean to its noncompliance with certain HUD servicing responsibilities. Therefore, in its motion for summary judgment, the burden fell upon Taylor–Bean to prove that there was no genuine issue of material fact that it had complied with these responsibilities.

Lacy–McKinney contends the trial court was precluded from entering summary judgment in favor of Taylor–Bean because there was a genuine issue of material fact as to whether Taylor–Bean complied with the requirement for a face-to-face meeting or made a reasonable effort to arrange such a meeting before three full monthly installments due on the mortgage were unpaid. *Appellant's Br.* at 22 (citing 24 C.F.R. § 203.604(b)). Although Taylor–Bean claimed that it did not have an office within 200 miles of the Property, Lacy–McKinney submitted designated evidence that Taylor–Bean had an Illinois office within the 200–mile range. The parties admit that Taylor–Bean did not have a face-to-face meeting with Lacy–McKinney. However, Taylor–Bean "has not submitted evidence that it complied with the requirement to make a reasonable effort to arrange a face-to-face meeting." *Id.* (citing 24 C.F.R. § 203.604(d)).[8] We agree that a genuine issue of material fact remains as to whether Taylor–Bean made a reasonable effort to arrange a face-to-face meeting in compliance with 24 C.F.R. § 203.604(d). Without this proof, Taylor–Bean cannot prevail on summary judgment. The parties also disagree as to whether Taylor–Bean accepted or returned partial mortgage payments. Taylor–Bean has failed to prove that it complied with 24 C.F.R. § 203.556 regarding the acceptance of partial payments. The trial court erred in granting summary

---

8. The CFR defines a reasonable effort as follows

> A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

24 C.F.R. § 203.604(d).

judgment in favor of Taylor–Bean on its action to foreclose on Lacy–McKinney's HUD-insured mortgage without first determining that Taylor–Bean had complied with Subpart C—the conditions precedent to foreclosure. We reverse the trial court's grant of summary judgment and remand for further proceedings.[9]

Reversed and remanded.

RILEY, J., and BAILEY, J., concur.

---

**9.** Lacy–McKinney also contends that summary judgment was improperly granted pursuant to the Truth in Lending Act ("TILA"). She maintains that Taylor–Bean failed to comply with TILA. Such noncompliance allowed Lacy–McKinney to rescind the loan transaction on her mortgage. Once the transaction was rescinded, Taylor–Bean lost its security interest in the Property and the trial court, in turn, was precluded from granting summary judgment in favor of Taylor–Bean. Finding, as we do, that summary judgment is precluded by a genuine issue of material fact as to whether Taylor–Bean complied with the conditions precedent under the HUD servicing responsibilities, we need not address Lacy–McKinney's alternative theory that Taylor–Bean's violation of TILA also precluded the trial court from granting summary judgment.