

FILED

Jun 13 2018, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Brian K. Wynne
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian K. Wynne,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Tyson Burris and Brian K. Alsip,<br>*Appellees-Defendants* | June 13, 2018<br><br>Court of Appeals Case No.<br>41A04-1710-SC-2363<br><br>Appeal from the Johnson Superior<br>Court<br><br>The Honorable Kevin Barton,<br>Judge<br><br>Trial Court Cause No.<br>41D01-1702-SC-741 |

**Altice, Judge.**

### Case Summary

[1]     Brian K. Wynne filed a small claims action against Tyson Burris and Burris's

attorney, Brian K. Alsip. The trial court found in favor of Burris and Alsip and

determined that Wynne's claims were brought in bad faith. Accordingly, the

trial court assessed attorney fees against Wynne. Wynne now appeals pro se

raising the following issues:

1. Did the trial court abuse its discretion by admitting into evidence recorded jail telephone calls between Wynne and his girlfriend, Barbara Mooney?

2. Does the evidence support the trial court's conclusion that Wynne had given Mooney actual authority to act as his agent regarding the settlement with Burris?

3. Should Alsip have been permitted to represent himself in this action?

4. Did the trial court err by rejecting Wynne's negligence claim against Alsip?

We affirm.

**Facts & Procedural History**

On January 28, 2015, Wynne began work on a home improvement project at Burris's home, which included the removal of flooring, demolition of a wall, and installation of new flooring. Wynne did not provide Burris with a written agreement or set a price but stated that the labor cost would not exceed $2500. Wynne worked over the next several days, appearing progressively later each day. Burris felt that the project was taking too long, and Burris started to notice "red flags." *Transcript* at 54.

During the project, Wynne unexpectedly brought a set of kitchen appliances to Burris's home to sell to him and his wife. Burris began to suspect that the appliances had been stolen and decided to contact local authorities. He learned

that Wynne was a suspect in a recent burglary. Burris provided a detailed statement to the Johnson County Sheriff's Office. Thereafter, on February 3, 2015, Wynne was arrested for burglary while working at Burris's home. As a result of his arrest, Wynne did not finish the project. Burris eventually hired others to complete the work.

[5] Wynne bonded out of jail and then tried to contact Burris regarding the project. Burris refused his calls but communicated with Wynne via text. They discussed a payoff amount, and Burris directed Wynne to contact Alsip, Burris's attorney, to complete the settlement. Burris provided Alsip with a cashier's check made out to Wynne. Alsip and Wynne arranged to meet at Alsip's office, and Wynne understood that he would need to sign a release in order to receive the check. This scheduled meeting, however, did not occur because Wynne was arrested on a warrant that same day.

[6] While in jail, Wynne made phone calls to Mooney, his longtime girlfriend. Wynne indicated on a number of occasions that he wanted Mooney to pick up the check, as well as handle other matters for him. In one phone call, Wynne reminded Mooney that she had his power of attorney (POA), and he referenced the POA in another recorded call. With respect to the check from Burris, Wynne directed Mooney as follows:

> If you get a check from [Burris] all you do is sign my name on
> the back of it, take it to the ATM machine and deposit it, ok.
> That way you don't have to put your name on it, no one's going
> to question it, it's gonna go straight in and you should, in a day,
> you should have access to the money, ok.

*Id.* at 106. Mooney understood from her discussions with Wynne that the amount of the settlement check was to be $1400.

[7] The POA Wynne referenced was obtained by Mooney at the jail on February 17, 2015, in order to get Wynne's vehicle out of the tow lot. The POA form was provided by the jail, and a deputy took the form to Wynne, who had verbally assented to the POA. Wynne then printed his own name twice and Mooney's name once in the appropriate blanks on the form. Wynne, however, did not sign his name on the signature line or list his social security number. The form was returned to Mooney. She filled out the few remaining blanks and mistakenly signed the form and listed her social security number where Wynne should have done so. The form was then presented to Deann Judd, an employee of the sheriff's office who was also a notary. Judd notarized the POA form without personally observing the form being signed or completed.

[8] As directed by Wynne, Mooney contacted Burris to complete the settlement. Mooney met with Alsip on March 23, 2015, and presented him with the POA and her driver's license. She also signed an affidavit prepared by Alsip regarding the settlement agreement and the POA. Mooney then signed the Settlement Agreement and General Release (the Agreement) on Wynne's behalf, and Alsip gave her the $1400 cashier's check made payable to Wynne.

[9] On February 24, 2017, Wynne filed a small claims action against Burris for services rendered and Alsip for negligence in releasing the cashier's check to

Mooney. The basis of Wynne's claims was that the POA was "invalid and possibly forged". *Appendix* at 9.

[10] On August 16, 2017, Wynne appeared telephonically from prison and represented himself at trial. Burris was represented by counsel, and Alsip represented himself. The trial court took the matter under advisement and then issued a detailed order on September 9, 2017.

[11] Despite concluding that the POA was invalid,[1] the trial court determined that both Wynne and Mooney believed that Wynne had appointed Mooney as his attorney in fact and that Wynne authorized her to obtain the settlement check on his behalf. Thus, the court concluded that Wynne had provided Mooney with actual authority to act as his agent in this matter, and Wynne could not now seek to avoid the Agreement. Further, with respect to the negligence claim against Alsip, the court determined that Alsip did not owe Wynne a duty of ordinary care because he represented Burris, not Wynne. In addition to entering judgment in favor of Burris and Alsip on Wynne's claims, the court granted Burris's request for attorney fees, explaining:

> Mr. Wynne empowered Ms. Mooney to act on his behalf under actual authority. After clearly instructing Ms. Mooney to accept the settlement on his behalf, Mr. Wynne now asserts that she had no authority as a result of the failure of the Johnson County Sheriff's Department to get a form properly signed and notarized.

---

[1] The court concluded that the POA was invalid under Ind. Code § 30-5-4-1 because it was not signed by Wynne and not properly notarized.

While a valid power of attorney was not created, Mr. Wynne ignores his own actions in vesting Ms. Mooney with actual authority. The litigation has been brought in bad faith.

*Id*. at 57-58. Wynne now appeals. Additional information will be provided below as needed.

## Discussion & Decision

### 1. Admission of Evidence

[12] Wynne contends that the trial court abused its discretion by admitting into evidence the recorded telephone conversations from the jail between him and Mooney. He asserts that these calls were confidential and that Alsip obtained them by "undocumented means." *Appellant's Brief* at 13. Wynne raises a litany of specific challenges to this evidence on appeal, but he only objected on two grounds below. We will therefore limit our review to those two preserved arguments.

[13] Wynne's first objection to this evidence was that the recorded jail calls had not been disclosed to him in discovery. Contrary to Wynne's assertion below, "automatic discovery" does not occur in small claims actions. *Transcript* at 100. Ind. Small Claims Rule 6 pertains to discovery and provides:

> Discovery may be had in a manner generally pursuant to the rules governing any other civil action, *but only upon the approval of the court and under such limitations as may be specified*. The court should grant discovery only upon notice and good cause shown and should limit such action to the necessities of the case.

*Id.* (emphasis supplied). Our review of the record, reveals that Wynne did not request discovery in this action. Accordingly, he cannot be heard to complain that he was unaware that Alsip had copies of these recorded phone conversations.

[14] Further, we remind Wynne of the informal nature of small claims hearings, as set out in Ind. Small Claims Rule 8(a):

> The trial shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law, and shall not be bound by the statutory provisions or rules of practice, procedure, pleadings or evidence except provisions relating to privileged communications and offers of compromise.

With this in mind, Wynne's various technical claims of alleged discovery violations and his reliance on the Indiana Trial Rules are misplaced. The trial court did not abuse its discretion by admitting this relevant and probative evidence at the small claims hearing over Wynne's objection.

[15] Next, Wynne argued below that the recordings violated the "Wiretap Act of Indiana" because Alsip "illegally intercepted wiretap [sic] without authorization through a search warrant or any other means." *Transcript* at 101. On appeal, he makes the unsupported assertion that Mooney had to have expressly consented to the calls being recorded in order for them to be admissible.

The recording of a communication with the consent of either the sender or the receiver is not an interception, as defined by the Indiana Wiretap Act. *See* Ind. Code § 35-31.5-2-176; *see also Edwards v. State*, 862 N.E.2d 1254, 1261-62 (Ind. Ct. App. 2007) (recipient of jail call consented to recording by accepting the call after hearing admonishment that call may be recorded or monitored), *trans. denied*. Here, the evidence establishes that Mooney was aware that the jail calls were being recorded, and she still accepted them. Additionally, Wynne acknowledges that the calls included "an automated voice that tells the called party that the phone call may be recorded." *Appellant's Brief* at 24. Under these circumstances, Mooney consented to the recording when she accepted the collect calls after being warned that the calls could be recorded. *See Steinberg v. State*, 941 N.E.2d 515, 523 (Ind. Ct. App. 2011), *trans. denied*. The recordings were, therefore, not in violation of the Indiana Wiretap Act and were admissible. *See id.*; *Edwards*, 862 N.E.2d at 1262.

## 2. Actual Agency

Wynne next argues that the evidence does not support the trial court's conclusion that Wynne had given Mooney actual authority to act as his agent regarding the settlement. Wynne's argument amounts to a request for us to reweigh the evidence, which we cannot do.

While the trial court entered findings of fact and conclusions thereon, Ind. Trial Rule 52(A) does not apply to small claims actions. The entry of special findings is contrary to the policy enunciated in Small Claims Rules 8 and 11. *See*

*Bowman v. Kitchel*, 644 N.E.2d 878, 879 (Ind. 1995). Thus, a small claims court cannot be required to enter special findings, and we do not apply a two-tiered standard of review in a small claims appeal. But where, as here, a small claims court elects *sua sponte* to enter findings and conclusions, they aid our review by providing us with a statement of the reasons for the trial court's decision. We, however, apply our usual standard of review: "[w]e consider evidence in the light most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. We will reverse a judgment only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion." *See Vance v. Lozano*, 981 N.E.3d 554, 558 (Ind. Ct. App. 2012) (citing *Berryhill v. Parkview Hosp.*, 962 N.E.2d 685, 689 (Ind. Ct. App. 2012)).

[19] Here, the trial court determined that Wynne conferred actual authority to Mooney to act on his behalf with respect to the settlement with Burris. An actual agency relationship is established by three elements: "(1) a manifestation of consent by the principal to the agent; (2) an acceptance of the authority by the agent; and (3) control exerted by the principal over the agent." *Douglas v. Monroe*, 743 N.E.2d 1181, 1186 (Ind. Ct. App. 2001). "These elements may be proven by circumstantial evidence, and there is no requirement that the agent's authority to act be in writing." *Demming v. Underwood*, 943 N.E.2d 878, 884 (Ind. Ct. App. 2011*), trans. denied*. The question of whether an agency relationship exists is generally a question of fact. *Id*.

[20] The facts and reasonable inferences favorable to the judgment reveal that Wynne partially filled out a form at the jail in an attempt to grant Mooney a

general POA, which Mooney needed in order to get his vehicle out of the tow lot. Thereafter, in phone conversations with Mooney, Wynne referred to the POA and "reiterate[d] numerous times that [she was] his power of attorney." *Transcript* at 99. According to Mooney, he authorized and instructed her to obtain a check for $1400[2] from Burris. Wynne then detailed what she was to do with the check, indicating that she should endorse it with his name and then deposit it into an ATM so that no questions are asked. Further, the record indicates that Wynne understood that in exchange for the check from Burris a release was required to be signed.

[21] As Wynne instructed, Mooney went to Alsip's office to obtain the $1400 settlement check. She presented Alsip with the POA and signed an affidavit indicating that she had full authority to settle the claims between Wynne and Burris and to accept the settlement check on Wynne's behalf. Mooney then executed the Agreement, and Alsip gave her the check made payable to Wynne.

[22] These facts amply support the trial court's conclusion that Mooney acted with actual authority. Wynne's arguments to the contrary are improper requests for us to reweigh the evidence.

### 3. Alsip's Self-Representation

---

[2] This was an amount that Burris and Wynne had previously discussed, and Mooney was "just kind of middle man" due to Wynne's incarceration. *Transcript* at 117.

As he did below, Wynne argues that Alsip was precluded from representing himself in this small claims action pursuant to S.C.R. 8(C)(3), which states:

> *Corporate Entities, Limited Liability Companies (LLC's), Limited Liability Partnerships (LLP's).* All corporate entities, Limited Liability Companies (LLC's), and Limited Liability Partnerships (LLP's) may appear by a designated full-time employee of the corporate entity in the presentation or defense of claims arising out of the business if the claim does not exceed one thousand five hundred dollars ($1,500.00). However, claims exceeding one thousand five hundred dollars ($1,500.00) must be defended or presented by counsel.

Wynne asserts that "Alsip as an attorney is designated as a Professional Corporation" and was required to be represented by legal counsel because Wynne's claims exceeded $1500. *Appellant's Brief* at 42. As the trial court observed, however, Wynne sued Alsip as an individual. Accordingly, Alsip was properly permitted to represent himself in the small claims action.

### 4. Negligence

Finally, Wynne contends that the trial court erred in denying his negligence claim against Alsip. Wynne asserts that the POA was invalid on its face and, therefore, Alsip was negligent when he released the check to Mooney and "failed to engage in a thorough investigation of the validity of the POA". *Id.* at 52. Wynne's lengthy arguments on this point are difficult to follow but all boil down to a fundamental misunderstanding of duty.

Acknowledging that Alsip represented Burris in the settlement, Wynne asserts that "Alsip owed a general duty to Burris to exercise ordinary skill and knowledge as an attorney when he released the check to Mooney." *Id*. at 49. Indeed, Alsip owed this duty to Burris – his client. *See Rice v. Strunk*, 670 N.E.2d 1280, 1283-84 (Ind. 1996) (setting out elements of an attorney malpractice claim, including that a client's employment of attorney creates a duty to "exercise ordinary skill and knowledge"). But Wynne's attempt to slide into the shoes of Burris is clearly untenable. Alsip did not owe a corresponding duty of care to Wynne. *See generally KeyBank Nat'l Assoc. v. Shipley*, 846 N.E.2d 290, 296-300 (Ind. Ct. App. 2006) (addressing the privity requirement in attorney negligence cases), *trans. denied*. The trial court properly entered judgment in favor of Alsip on the negligence claim. [3]

Judgment affirmed.

Najam, J. and Robb, J., concur.

---

[3] Wynne asserts that the trial court improperly acted as an advocate for Alsip by developing a defense for him that was not pled as an affirmative defense. This argument ignores the informal nature of small claims hearings. *See* S.C.R. 8(A). Further, Ind. Small Claims Rule 5(A) expressly provides that "[a]ll defenses shall be deemed at issue without responsive pleadings".