## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 24 2019, 6:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Duran L. Keller
Keller Law, LLP
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

David J. Jurkiewicz
Nathan T. Danielson
Christina M. Bruno
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward Gaeta,

*Appellant-Defendant,*

v.

The Huntington National Bank,

*Appellee-Plaintiff.*

June 24, 2019

Court of Appeals Case No.
18A-MF-408

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1604-MF-97

**Mathias, Judge.**

[1]     Following a bench trial, the Tippecanoe Superior Court entered judgment in favor of The Huntington National Bank ("Huntington") in Huntington's

complaint for foreclosure against Edward Gaeta ("Gaeta"). Gaeta then filed a motion to correct error, which the trial court denied. Gaeta appeals and presents twelve issues, one of which we find dispositive and restate as: whether the trial court erred by concluding that Huntington complied with binding federal regulations governing Huntington's actions in this foreclosure action. Concluding that the evidence clearly shows that Huntington did not comply with the federal regulations, which are a condition precedent to it seeking foreclosure on the mortgage at issue, we reverse and remand.

## Facts and Procedural History

In September 2008, Gaeta executed a promissory note (the "Note") payable to Huntington in the principal amount of $78,859. This loan was secured via a mortgage (the "Mortgage") against a residence on Chilton Drive in Lafayette, Indiana ("the Property"). The terms of the Note required Gaeta to make monthly payments of $498.45, plus additional amounts to be placed in escrow for property taxes.[1] The loan was insured by the Federal Housing Administration ("FHA"), thereby subjecting the Note and Mortgage to regulations promulgated by the federal Department of Housing and Urban Development ("HUD"). In fact, the Note and Mortgage expressly incorporate the relevant HUD regulations.

---

[1] Although it is not entirely clear, it appears that the total monthly payment due was approximately $644.

[3] Gaeta failed to make a timely payment on the first due date of November 1, 2008. Instead, he made a payment of $644.61 on November 24, 2008. The following month, he made a payment of $619.82 on December 23, 2008. Gaeta did not make any payment in January 2009, but he did make two payments of $619.82 on February 9, 2009. Gaeta then made no payments in March or April 2009, but made a payment of $644.61 on May 15, 2009, which was applied to the March payment. Gaeta made no payment in June 2009. Thus, at that point, he was three months behind in his payments, as the payments for April, May, and June were unpaid. This is important because federal regulations require Huntington to engage in certain steps, including seeking a face-to-face meeting with the mortgagor, "before three full monthly installments due on the mortgage are unpaid" on an FHA loan. 24 C.F.R. § 203.604(b).

[4] After Gaeta made no payment on June 1, 2009, Huntington, on June 6, 2009, called Gaeta regarding his delinquency. Gaeta indicated that he intended to make a payment on his loan that month. But Gaeta made no payment that June. On July 14, 2009, Gaeta called Huntington, and he and an employee of Huntington discussed a repayment program. Six days later, a Huntington employee made a note in Gaeta's loan file indicating that Gaeta and Huntington had reached a repayment plan. Huntington also sent Gaeta a letter on July 20, 2009, setting out the terms of the repayment plan as follows:

> Your mortgage loan is in default in the amount of $2,614.44.
>
> The following repayment plan is the first step in bringing your loan current.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|------|------|------|------|
| 01 | 07/24/09 | 1,250.00 | 02 | 08/24/09 | 824.82 |
| 03 | 09/24/09 | 824.82 | 04 | 10/24/09 | 824.82 |
| 05 | 11/24/09 | 824.82 | 06 | 12/24/09 | 824.82 |
| 07 | 01/24/10 | 824.82 | | | |

It is understood that the terms and provisions of the note and security instrument securing the captioned loan shall remain in full force and effect. Should you fail to honor the above repayment plan, legal proceedings according to the terms of the said note and security instrument could be initiated. Huntington Mortgage reserves the right to alter this Repayment Agreement should requirements for the escrow deposit increase or decrease.

Please review the attached terms of the Repayment Agreement. Sign and return both the Repayment Agreement and the Repayment Agreement Requirements in the postage paid envelope provided. We have provided you with a copy of both, for your records. Do not return the copy. Post it in a conspicuous place for easy reference. These items must be returned no later than July 30, 2009. If the agreement letters are not returned the plan is voided.

Ex. Vol. 1, Plaintiff's Ex. 13.

[5] Although Gaeta did not sign or return the repayment plan agreement to Huntington, he made a payment of $1,250 on July 24, 2009, in apparent compliance with the repayment plan. Huntington applied the $1,250 payment to the April and May 2009 installments. Under the terms of the repayment plan, the June 1, 2009 installment was due on August 24, 2009, but Gaeta made no further payments under the repayment plan. And when Huntington attempted to call Gaeta on August 31, 2009, it was unable to reach him.

[6]     Huntington's inability to reach Gaeta at this time was apparently due to the fact that, on August 25, 2009, he had enlisted in the United States Marine Corps and moved out of the Property to attend boot camp. Thereafter, until August 2014, Gaeta rented out the Property to a third party.

[7]     On September 8, 2009, when the June 2009 installment was still due, Huntington received an $800.00 payment on the Loan. Huntington returned this payment the following day. But when an $800 payment posted to the account on October 12, 2009, Huntington did not return this payment. Instead, Huntington applied this to the June 2009 installment. Nor did Huntington return a $700 payment made on November 16, 2009, which Huntington applied to the July 2009 installment.

[8]     On November 25, 2009, Gaeta called Huntington to inform them that he had finished boot camp and was renting the Property to a third party. Gaeta and Huntington also discussed a new repayment plan, under which Gaeta would make an initial payment of $800 on December 4, 2009, and six payments of $994.89 from January 16, 2010 through June 16, 2010.

[9]     Gaeta made an $800 payment via check on December 1, 2009, in compliance with the terms of the new repayment plan. Huntington applied this payment to the August 2009 installment, but the check was later returned for insufficient funds. Gaeta made no further payments until July 15, 2010, which Huntington applied to the still-unpaid August 2009 installment. On June 1, 2012, Huntington received a $107.02 payment, but returned this payment on June 26,

2012. Although Gaeta continued to make periodic payments on his mortgage while in the Marines, he never paid enough to bring the loan current.

[10] While Gaeta remained on active duty the military, Huntington took no steps to accelerate the loan or foreclose the mortgage. A Huntington representative later explained that Huntington withheld action due to the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901–4043, which barred Huntington from foreclosing while Gaeta was on active duty or for one year after he returned from active duty, without prior court approval. *See* 50 U.S.C. § 3953. Thus, according to Huntington, it "self-imposed a SCRA-related foreclosure hold on the Loan." Appellee's Br. at 17 n.7.

[11] On September 1, 2014, after his active service in the Marines ended, Gaeta began to live in the Property again. On July 30, 2015, Huntington received a $700.00 payment on the loan, which it applied to the then-delinquent May 2014 installment. On August 12, 2015, Huntington mailed Gaeta a Notice of Intention to Accelerate and Foreclose. This notice informed Gaeta of his default and gave him an opportunity to cure, but Huntington still did not offer Gaeta the opportunity for a face-to-face meeting.

[12] On November 30, 2015, Huntington filed a foreclosure action against Gaeta in the Tippecanoe Superior Court under Cause No. 79C01-1511-MF-00228 (the "Prior Foreclosure Action"). Thereafter, on January 4, 2016, Gaeta requested a settlement conference, which was held on February 1, 2016. However, the parties were unable to reach a settlement agreement.

[13]     On February 9, 2016, over six years since Gaeta first fell more than three months behind in his mortgage payments, Huntington finally sent a letter to Gaeta offering the opportunity for a face-to-face meeting. Huntington employees then attempted to visit Gaeta to meet with him face to face on February 12, February 14, and February 16, 2016, but Gaeta was not at home. On February 22, 2016, the Prior Foreclosure Action was dismissed without prejudice.

[14]     On March 1, 2016, Gaeta telephoned Huntington and requested a face-to-face meeting.[2] In response, a Huntington employee informed Gaeta of two local branches Gaeta could visit. The Huntington employee also told Gaeta how to contact a local branch to schedule a meeting and informed him that, if he went to a branch, a loan officer could speak with him and help him complete a loss-mitigation packet. Gaeta never requested a loan mitigation packet, nor did he visit any branch of Huntington.

[15]     On April 8, 2016, Huntington filed a second complaint on the Note and to foreclose the mortgage. Gaeta filed an answer on July 19, 2016, asserting eighteen affirmative defenses. On November 7, 2016, Huntington filed a

---

[2] Huntington makes much of the fact that Gaeta made this call with his counsel present and also recorded the call without informing the Huntington employee with whom he was speaking that the call was being recorded. We note, however, that under the Indiana Wiretap Act, only the consent of one party—either the sender or the receiver—is required to record a telephone call. *See Dommer v. Dommer*, 829 N.E.2d 125, 139 (Ind. Ct. App. 2005) (citing Ind. Code § 35-33.5-1-5 (now codified at Ind. Code § 35-31.5-2-176)), *trans. denied*; *see also Wynne v. Burris*, 105 N.E.3d 188, 192 (Ind. Ct. App. 2018) ("The recording of a communication with the consent of either the sender or the receiver is not an interception, as defined by the Indiana Wiretap Act."). Thus, the fact that Gaeta recorded this call is of no moment.

motion for summary judgment. Gaeta filed a response opposing summary judgement on April 17, 2017. The trial court held a summary judgment hearing on June 12, 2017. Four days later, Gaeta filed a motion for leave to file an amended answer, along with his proposed amended answer. Huntington objected to Gaeta's motion for leave to amend. On August 2, 2017, the trial court denied Gaeta's motion for leave to amend his answer and also denied Huntington's motion for summary judgment.

[16]    A bench trial was held on August 30, 2017. After Huntington rested its case-in-chief, Gaeta moved for a judgment on the evidence and again moved to amend his answer to assert additional affirmative defenses. The trial court denied the motion for judgment on the evidence but took the motion to amend under advisement. At the conclusion of the trial, the court took the matter under advisement and ordered both parties to submit post-trial briefs and proposed orders by October 6, 2017.

[17]    On September 1, 2017, before the trial court issued its judgment on the trial, Gaeta filed what he dubbed a motion to correct error claiming that the trial court erred by denying his pretrial motion for leave to amend.[3] After Huntington filed its response, the trial court denied Gaeta's motion on September 19, 2017.

---

[3] A motion to correct error is proper only *after* the entry of final judgment; any such motion filed prior to the entry of final judgment must be viewed as a motion to reconsider. *Snyder v. Snyder*, 62 N.E.3d 455, 458 (Ind. Ct. App. 2016).

[18] On December 20, 2017, the trial court entered its findings of fact and conclusions of law. The trial court found that Gaeta was in default and that Huntington had satisfied any conditions precedent to foreclosure, specifically meeting certain requirements set forth in HUD regulations that Gaeta had raised as affirmative defenses. With regard to Gaeta's affirmative defense based on 24 C.F.R. § 203.604, the trial court determined:

> 18. Mortgagors can raise an affirmative defense of failure to perform a condition precedent by asserting that mortgagees failed to comply with HUD servicing regulations prior to commencing foreclosure.
>
> * * *
>
> 20. The Court finds that as of July 1, 2009, Gaeta was three full monthly installments delinquent on the Loan payments, which was due for April 1, 2009.
>
> 21. The Court finds sufficient evidence establishing that around July 14, 2017 [sic][4] the parties verbally intended to enter into a repayment plan. Gaeta made the first payment of $1,250.00 per the terms, but failed to execute and return the written repayment plan and further failed to timely make the subsequent payment. The Court, therefore, concludes that no repayment plan was entered into, though Gaeta made periodic payments thereafter.
>
> 22. The Court finds that following application of the $1,250.00 payment on July 24, 2009, Gaeta was less than three full monthly installments delinquent on the Loan payments.

---

[4] This actually occurred in July 2009.

23. The Court finds Gaeta did not live in the Property between August 25, 2009 through early November 2014.

24. The Court finds that as of September 1, 2009, Gaeta was three full monthly installments delinquent on the Loan payments, which was due for June 1, 2009. The Court finds that as of this time, pursuant to 24 CFR § 203.604(c), a face-to-face interview was not required because Gaeta did not reside in the Property.

25. The Court finds sufficient evidence establishing that around November 25, 2009, the parties verbally agreed to terms for a repayment plan. Gaeta sent in a first payment of $800.00 by December 1, 2009 in accordance with the terms but this payment was not applied due to it being rejected for non-sufficient funds. The Court, therefore, concludes that the repayment plan was void.

26. The Court finds that following the failure to enter into the repayment plan pursuant to 24 CFR § 203.604(c), a face-to-face interview was not required because Gaeta did not reside in the Property.

27. The Court finds that following Gaeta moving back to the Property in 2015, the 24 CFR § 203.604 face-to-face interview was not required as Gaeta failed to bring the Loan current or paid within fully monthly installments during that time, or any time thereafter.

28. The Court concludes the evidence sufficiently establishes that the 24 CFR § 203.604 face-to-face interview was not required, and that Huntington complied with its requirements. Further, even if the face-to-face interview was otherwise required, Huntington offered one and Gaeta, by his actions, refused.

Appellant's App. pp. 26–29 (citation omitted). The trial court also concluded

that Gaeta had failed to establish his other claimed affirmative defenses. The

trial court's order included a money judgment in favor of Huntington, a decree foreclosing the mortgage, and an order to sell the Property.

[19] On January 17, 2018, Gaeta filed a motion to correct error, this time claiming error in the trial court's final judgment. The trial court denied this motion on February 2, 2018, and Gaeta filed a notice of appeal on February 20, 2018.

## Standard of Review

[20] Here, the trial court entered findings of fact and conclusions sua sponte. In such cases, the trial court's specific findings control only with respect to the issues they cover, and a general judgment standard applies to issues outside the trial courts findings. *Collyear-Bell v. Bell*, 105 N.E.3d 176, 183–84 (Ind. Ct. App. 2018). The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id.* at 184. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* On appeal, we neither reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment. *Id.*

[21] Of course, to the extent that our decision requires us to interpret the contractual language of the note or mortgage, or interpret the language of a statute, our review is de novo, as these issues present pure questions of law. *Smith v. Champion Trucking Co.*, 925 N.E.2d 362, 364 (Ind. 2010); *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005).

# Discussion and Decision

[22]     Gaeta's first six arguments all revolve around the application of a particular HUD regulation: 24 C.F.R. § 203.604. This regulation, entitled "Contact with the mortgagor," provides in relevant part:

> (b) **The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid**. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . .
>
> (c) A face-to-face meeting is not required if:
>
> > (1) The mortgagor does not reside in the mortgaged property,
> >
> > (2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,
> >
> > (3) The mortgagor has clearly indicated that he will not cooperate in the interview,
> >
> > (4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or
> >
> > (5) A reasonable effort to arrange a meeting is unsuccessful.
>
> (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more

than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property. . . .

24 C.F.R. § 203.604.

[23] This court had opportunity to address 24 C.F.R. § 203.604 in *Lacy-McKinney v. Taylor Bean & Whitaker Mortgage Corp.*, 937 N.E.2d 853 (Ind. Ct. App. 2010). The *Lacy-McKinney* court provided the following background on FHA-insured mortgages:

> The FHA, which was created by the National Housing Act of 1934, "is the largest government insurer of mortgages in the world." The FHA, which is a part of HUD, provides mortgage insurance on single-family, multifamily, manufactured homes, and hospital loans made by FHA-approved lenders throughout the United States and its territories. Under this program, mortgagee/lenders are induced to make essentially risk-free mortgages by being guaranteed against loss in the event of default by the mortgagor. *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 701 F.2d 112, 113–14 (10th Cir. 1983). This program allows mortgagees to offer loans to low-income families at a more favorable rate than would otherwise be available in the market. *Id*. The availability of affordable mortgages, in turn, promotes Congress's "national goal" of "a decent home and suitable living environment for every American family." 12 U.S.C. § 1701t
>
> Pursuant to the authority conferred by Congress, HUD promulgated regulations pertaining to HUD-insured mortgages. The regulations regarding a mortgagee's servicing responsibilities of such mortgages are codified in Title 24, Part 203 (Single Family Mortgage Insurance), Subpart C (Servicing Responsibilities) ("Subpart C") of the Code of Federal Regulations ("CFR"). 24 C.F.R. §§ 203.500–.681. Subpart C

contains mortgagee servicing responsibilities and also provides certain relief for the mortgagor, e.g., "conditions of special forbearance," 24 C.F.R. § 203.614, "mortgage modification.," 24 C.F.R. § 203.616, and a requirement that "[c]ollection techniques must be adapted to individual differences in mortgagors and take account of the circumstances peculiar to each mortgagor," 24 C.F.R. § 203.600.

A mortgagee who participates in this HUD program must comply with the servicing responsibilities set forth in Subpart C. One of Subpart C's requirements, which is pertinent to this appeal, mandates that a mortgagee must initiate face-to-face contact with the mortgagor prior to foreclosure. 24 C.F.R. § 203.604. . . .

* * *

"**It is the intent of the Department [HUD] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart [C] have been followed.**" 24 C.F.R. § 203.500.

*Lacy-McKinney*, 937 N.E.2d at 860 (emphasis added) (internet citations omitted).

[24]    The *Lacy-McKinney* court held that non-compliance with HUD regulations could be used as an affirmative defense to a mortgage forfeiture complaint. *Id.* at 862–63 (citing *Bankers Life Co. v. Denton*, 458 N.E.2d 203 (Ill. App. Ct. 1983). This is true even though the HUD regulations do not create a private cause of action. *Id.* (citing *Cross v. Fed. Nat'l Mort. Ass'n*, 359 So.2d 464 (Fla. Dist. Ct. App. 1978); *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 549 (Md. 2007); *Fed. Nat'l Mortg. Ass'n v. Ricks*, 372 N.Y.S.2d 485, 497 (N.Y. Sup. Ct. 1975)).

[25] The *Lacy-McKinney* court further held that non-compliance with HUD regulations is not merely an equitable defense akin to the doctrine of unclean hands. Instead, the court stated:

> We find it problematic to treat such noncompliance merely as an equitable remedy. If noncompliance with HUD regulations is merely "unclean hands," a court may be precluded from requiring compliance in cases where the mortgagor is also deemed to have unclean hands. Hence, the equitable approach is limited in its ability to promote a mortgagee's compliance with HUD regulations. Instead, we agree with the reasoning of **Denton and view the affirmative defense of noncompliance with HUD regulations as the failure of the mortgagee to satisfy a HUD-imposed condition precedent to foreclosure.**

*Lacy-McKinney*, 937 N.E.2d at 863 (emphasis added).

[26] In the present case, Gaeta argues that Huntington violated this regulation by failing to have a face-to-face interview with him **before** three full monthly installments due on his mortgage went unpaid back in June 2009. It is undisputed that Huntington did not attempt a face-to-face meeting with Gaeta before he was three full monthly installments behind in his payments. In *Lacy-McKinney*, this court clearly held that compliance with 24 C.F.R. § 203.604 was a condition precedent to foreclosure. 937 N.E.2d at 863. As a general rule, a condition precedent must be fulfilled, or no liability can arise on the promise that the condition qualifies. *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974

N.E.2d 1031, 1050 (Ind. Ct. App. 2012) (citing *McGraw v. Marchioli*, 812 N.E.2d 1154, 1157 (Ind. Ct. App. 2004)).[5]

[27] Huntington does not deny that it failed to have a face-to-face interview with Gaeta before three full monthly installments due on the mortgage were unpaid in June 2009. Nor is there any evidence that Huntington made a reasonable effort to arrange such a face-to-face meeting with Gaeta before three full monthly installments due were unpaid.

[28] Instead, Huntington simply called Gaeta on June 6, 2009, with regard to his delinquency. Huntington also discussed a repayment plan with Gaeta on July 20, 2009, after Gaeta called Huntington. Huntington sent Gaeta a proposed repayment plan, and although he did not sign the repayment plan, he did make one payment under the terms of the plan. The trial court concluded that, after applying this July 24, 2009 payment, "Gaeta was less than three full monthly installments delinquent on the Loan payments." Appellant's App. p. 28. However, this does not negate the fact that Gaeta had already been more than three months behind in his payments, yet Huntington did not contact him to attempt to have a face-to-face meeting as required by 24 C.F.R. § 203.604,

---

[5] "One party's compliance with a condition precedent, however, may be excused by the other party's waiver. *Id*. at 1050–51. "Waiver of a contractual provision is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intent to relinquish it." *Id*. at 1051. "'Waiver may be implied from the acts, omissions, or conduct of one of the parties to the contract.'" *Id*. (quoting *Westfield Nat. Ins. Co. v. Nakoa*, 963 N.E.2d 1126, 1132 (Ind. Ct. App. 2012), *trans. denied*). Here, there is no indication that Gaeta ever waived the HUD-imposed conditions precedent, and Huntington does not argue that these provisions were waived.

which requires a meeting **before** a mortgagor becomes more than three months delinquent in his or her payments.

[29]     After Gaeta joined the Marines, Gaeta made some payments toward the loan but never brought the account current. Huntington chose not to seek court approval under SCRA to foreclose on the mortgage while Gaeta was on active duty or for one year after he returned from active duty. The trial court properly concluded that no face-to-face meeting was required at this time, as Gaeta no longer lived in the Property. *See* 24 C.F.R. § 203.604(c)(1) (providing that no face-to-face meeting is required if the mortgagor does not reside in the mortgaged property).

[30]     On July 30, 2016, almost one year after Gaeta began to live in the Property after his return from active duty, he made a $700 payment, which Huntington applied to the then-delinquent May 2014 installment. At this point, Gaeta was over one year behind in his mortgage payments, yet Huntington still did not offer Gaeta the opportunity for a face-to-face meeting. Instead, Huntington gave Gaeta notice of his default and one last opportunity to cure. On November 30, 2015, Huntington filed the Prior Foreclosure Action, still without ever having conducted or attempted to conduct a face-to-face meeting with Gaeta, in clear violation of the applicable HUD regulations.

[31]     It was not until February 9, 2016, after it had already filed the Prior Foreclosure Action, and over six years after Gaeta first became more than three full months behind in his payments, that Huntington finally sent Gaeta a letter offering him

the opportunity for a face-to-face meeting. By this time, almost a year and a half had passed since Gaeta had returned from the Marines and had yet to bring his account current.

[32] From this, it is abundantly clear that Huntington did not have, or attempt to have, a face-to-face meeting with Gaeta *before* he became more than three months behind in his mortgage payments in June 2009. We recognize that, under 24 C.F.R. § 203.604(c)(4), a face-to-face meeting is not required if the parties enter into a "repayment plan consistent with the mortgagor's circumstances . . . thus making a meeting unnecessary, and payments thereunder are current[.]" Here, however, the trial court specifically found that, although Huntington discussed a repayment plan with Gaeta, and Gaeta even made one payment under the terms of the proposed repayment plan, that "no repayment plan was entered into" by the parties. Appellant's App. p. 28. And there is evidence to support this conclusion, i.e. that Gaeta never signed the letter memorializing repayment plan and never made any further payments under that plan.

[33] Accordingly, payments under the proposed repayment plans were not current, and the exception to the face-to-face meeting requirement contained in 24 C.F.R. § 203.604(c)(4) is inapplicable. And again in November 2009, the parties verbally agreed to a repayment plan, but the $800 check Gaeta tendered was returned for insufficient funds, and the trial court found that this repayment plan was therefore "void," and Gaeta was never current under the terms of the

plan. Thus the exception contained in Section 203.604(c)(4) was again inapplicable.

The trial court also concluded that, after Gaeta returned from active duty and moved back into the Property, a "face-to-face interview was not required as Gaeta failed to bring the Loan current or paid within fully monthly installments during that time, or any time thereafter." Appellant's App. p. 28. But 24 C.F.R. § 203.604 does not require the mortgagor to be current before triggering the face-to-face meeting requirement. To the contrary, it requires the meeting be held or attempted **before** the mortgagor becomes more than three full months delinquent in payments. That is, 24 C.F.R. § 203.604 requires that the mortgagor be **behind** in payments before triggering the face-to-face meeting requirement, and the fact that Gaeta was behind in his payments is not a reason to excuse Huntington's failure to comply with this condition precedent.

The trial court also concluded that the face-to-face meeting "was not required, and that Huntington complied with its requirements. Further, even if the face-to-face interview was otherwise required, Huntington offered one and Gaeta, by his actions, refused." *Id*. at 29. As discussed above, however, the evidence was clear that, by June 2009, Gaeta was three months behind in payments, triggering the requirements of 24 C.F.R. § 203.604, yet Huntington did not attempt a face-to-face meeting. To the extent the trial court concluded otherwise, this was clearly erroneous.

Although there was evidence that Huntington contacted Gaeta in February 2016 to offer a face-to-face meeting, this was six years after Huntington's obligation to attempt a face-to-face meeting with Gaeta had arisen. It was also over a year and a half since Gaeta had returned from active duty and was still delinquent in his payments. Thus, even if we excuse Huntington's inaction during Gaeta's active duty, it ignored the requirements of the HUD regulations for months after his return. Even under our highly deferential standard of review, i.e., considering only the evidence favorable to the trial court's judgment, we can only conclude that Huntington clearly did not comply with the explicit requirements of 24 C.F.R. § 203.604. The trial court clearly erred in concluding otherwise.

Nevertheless, Huntington argues on appeal that it "substantially complied" with the intent of this regulation. Huntington acknowledges that *Lacy-McKinney* held that compliance with the face-to-face meeting requirement contained in 24 C.F.R. § 203.604 is a condition precedent to foreclosure but claims that *Lacy-McKinney* did not explain "how a mortgagee's performance of such a condition precedent should be measured." Appellee's Br. at 33. Huntington contends that the question of whether a mortgagee bank complied with this section should be left to the discretion of the trial court, sitting in equity. Huntington correctly notes that foreclosure is an equitable proceeding. However, this court in *Lacy-McKinney* held that non-compliance with HUD regulations is not merely an equitable defense; instead, the court concluded that compliance was a condition precedent to foreclosure. *Lacy-McKinney*, 937 N.E.2d at 863. Thus, we reject

Huntington's argument that we should consider its non-compliance in terms of equity.

[38] With regard to Huntington's argument that it substantially complied with the requirements of 24 C.F.R. § 203.604, Indiana courts have long recognized that substantial compliance with a statutory mandate is sufficient if the act of compliance accomplishes the essential purpose of the statute. *Lewis v. Bd. of Sch. Trs. of Charles A. Beard Mem'l Sch. Corp.*, 657 N.E.2d 180, 183 (Ind. Ct. App. 1995), *trans. denied*. Here, however, the trial court made no findings regarding substantial compliance. Nor are we entirely sure that the doctrine of substantial compliance is applicable, as HUD has made it clear that its intent is that "no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart [which contains the 24 C.F.R. § 203.604] have been followed." 24 C.F.R. § 203.500.

[39] But even assuming that substantial compliance would be sufficient, we are unable to agree with Huntington that it did, in fact, substantially comply with the requirements of 24 C.F.R. § 203.604. The purpose of 24 C.F.R. § 203.604 is to require a mortgage bank to have a meeting, **in person**, with an FHA mortgagor *before* the mortgagor becomes several months delinquent in his or her mortgage payments. It is clear that HUD has signaled its intent that banks issuing FHA-guaranteed mortgages must do more than a mortgagee bank for a non-FHA guaranteed mortgage to help the mortgagor avoid foreclosure. One of the things a bank holding such a mortgage must do is attempt to have a face-to-face meeting with the mortgagor before the mortgagor becomes more than three

months behind in his or her payments. Early intervention is clearly the goal of this regulation.

[40] Here, however, Huntington made no effort to have any sort of meeting until well after Gaeta was more than three months behind in his mortgage payments. When Gaeta made no payment in July 2009, he became four months behind in his payments. All Huntington did was telephone Gaeta and attempt to set up a repayment plan. Again, however, this was after Gaeta was more than three months behind in his payments, and the applicable HUD regulations require a face-to-face meeting *before* the mortgagor becomes more than three months behind in his or her payments. As noted above, Huntington did not even attempt to set up a face-to-face meeting until six *years* after Gaeta first became more than three months behind in his payments. This was also over one year after Gaeta had returned from the Marines and was still months behind in his payments. By the time it sent an offer for a face-to-face meeting, Huntington had already informed Gaeta of its intent to foreclose and had even initiated the Prior Foreclosure Action. Under these facts and circumstances, we cannot say that Huntington substantially complied with the requirements of 24 C.F.R. § 203.604.[6]

---

[6] This is not to say that, under different circumstances, failure by a mortgagee lender to comply with the request for a face-to-face meeting requirement, would necessarily prevent a later foreclosure action against a mortgagor, like Gaeta. And in this case, as discussed below, Huntington retains its money judgement against Gaeta, with all of the common post-judgement collection remedies available to it, including levy of execution. Indeed, Huntington's judgement became a lien against the property as of the date of its entry, pursuant to Indiana Code section 34-55-9-2.

[41] Huntington also argues that Gaeta was not prejudiced by its failure to comply. However, the cases cited by Huntington in support of this argument all involve breach-of-contract claims brought by a mortgagor seeking monetary damages against a mortgagee bank for failure to comply with the incorporated HUD regulations. *See e.g., Njema v. Wells Fargo Bank, N.A.*, 124 F. Supp. 3d 852 (D. Minn. 2015). Here, Gaeta has brought no breach-of-contract action seeking monetary damages against Huntington and argues only that the 24 C.F.R. § 203.604 is a condition precedent to foreclosure that Huntington failed to satisfy. And the question in this case is not whether Gaeta suffered any damages, but whether Huntington complied with a condition precedent to foreclosure.

[42] Huntington also contends that Gaeta's situation would be no different if Huntington had complied with the face-to-face meeting requirement. But this is akin to proving a negative. There is no way we can know whether an early intervention would have prevented Gaeta's continued delinquencies.

[43] In short, even considering only the evidence favorable to the trial court's decision, this evidence clearly shows that Huntington failed to strictly comply with the requirements of 24 C.F.R. § 203.604. Nor did Huntington's actions constitute substantial compliance with the face-to-face meeting requirement. Thus, Huntington failed to comply with a condition precedent to foreclosure. To the extent that the trial court concluded otherwise, this was clearly erroneous. We therefore reverse the trial court's judgment granting Huntington's action to foreclose on the mortgage.

[44]  Our holding may seem to be harsh to Huntington. But, under the FHA, mortgagee banks, like Huntington "are induced to make essentially risk-free mortgages by being guaranteed against loss in the event of default by the mortgagor." *Lacy-McKinney*, 937 N.E.2d at 860 (citing *Anderson*, 701 F.2d at 113–14). In exchange, the mortgagee must comply with HUD-promulgated regulations, including the responsibilities set forth in 24 C.F.R. § 203.604. *Lacy-McKinney*, 937 N.E.2d at 860. And as this court held in *Lacy-McKinney*, compliance with these regulations is a condition precedent to foreclosure, as HUD has made very clear. *Id*. at 861 (citing 24 C.F.R. § 203.500 ("It is the intent of [HUD] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart [C] have been followed.")). The failure to comply with these conditions precedent is an affirmative defense to foreclosure. *Id.* at 864. Huntington wants to "have its cake and eat it too," i.e., obtain the benefits of the reduced risk of loss on FHA-guaranteed loans, but still be able to foreclose despite its clear failure to comply with the HUD-promulgated regulations.

[45]  That having been said, we do agree with Huntington that, even if it is prohibited from seeking foreclosure due to its failure to abide by the applicable HUD regulations, this does not mean that the money judgment in favor of Huntington is improper. Gaeta's failure to pay the loan secured by the mortgage was clearly established. And the failure to comply with the HUD regulations is an affirmative defense to foreclosure. But this does not mean that

Huntington is not entitled to a money judgment on the loan based on Gaeta's failure to pay.

## Conclusion

[46] Accordingly, we reverse the judgment of the trial court to the extent that it granted Huntington's request to foreclose on the mortgage.[7] But we affirm the trial court's money judgment in favor of Huntington on the unpaid balance of the Loan.

[47] Affirmed in part, reversed in part, and remanded for proceeding consistent with this opinion.

Vaidik, C.J., and Crone, J., concur.

---

[7] Because of our conclusion, we need not address the remainder of Gaeta's arguments, all of which attack the propriety of the foreclosure.