## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Rori L. Goldman
Brandais H. Hagerty
Hill Knotts & Goldman, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Arlington South Vet Clinic, *Appellant-Defendant,*<br><br>v.<br><br>Kimberly Zimmerman, *Appellee-Plaintiff* | November 15, 2019<br><br>Court of Appeals Case No. 19A-SC-01018<br><br>Appeal from the Monroe Circuit Court IV<br><br>The Honorable Catherine Stafford, Judge<br><br>Trial Court Cause No. 53C04-1901-SC-000145 |

**May, Judge.**

[1] Kimberly Zimmerman filed a Notice of Claim in the Monroe Circuit Court against Arlington South Vet Clinic ("Arlington") alleging the clinic negligently

treated her dog.  After a bench trial, the court ruled in favor of Zimmerman.
Arlington appeals and raises three issues.  We find one issue to be dispositive,
which we restate as: whether Arlington breached its duty to provide adequate
veterinary care to Zimmerman's dog, Wiggles.  We reverse and remand for the
trial court to enter judgment in favor of Arlington.

## Facts and Procedural History

In 2018, Wiggles was a ten-year-old female Labrador Retriever.  She was a
regular patient at Arlington and suffered from diabetes, arthritis, and other
ailments.   To combat Wiggles' diabetes, Arlington instructed Zimmerman to
administer twenty units of insulin to Wiggles twice a day with a U-40 insulin
syringe.  The dosage level was eventually increased to thirty-one units of
insulin.  On August 29, 2018, Zimmerman noticed Wiggles was tired, refusing
to eat, drinking lots of water, and losing weight.

Zimmerman took her to Arlington, and veterinarian Dr. Dale Miller examined
Wiggles.  Wiggles was weak, lethargic, and having trouble walking.
Zimmerman told Dr. Miller that she had measured Wiggles' blood glucose level
prior to bringing her to the clinic and her blood glucose level was 518
milligrams per deciliter of blood ("mg/dL").  Clinic staff measured Wiggles'
blood glucose level upon admission, and it was 675 mg/dL.  Dr. Miller testified
the normal blood glucose level for a diabetic canine is between 200 and 300
mg/dL. Dr. Miller diagnosed Wiggles as suffering from a combination of
uncontrolled diabetes and arthritis.  Dr. Miller admitted Wiggles to the clinic to

monitor her blood glucose levels, start her on IV fluids, and get her on a steady schedule of insulin. Arlington checked Wiggles' blood glucose level two to three times daily, performed a urine test to see how well her body was absorbing sugar, and continued to monitor her. Wiggles' condition and behavior improved over the course of her hospital stay. Her blood glucose levels stabilized, and Arlington discharged Wiggles on September 1, 2018.

[4] After Wiggles returned home, her condition deteriorated. Zimmerman sent e-mails to Arlington regarding Wiggles. Dr. Miller's assistant responded to these e-mails rather than a veterinarian. Zimmerman also called Arlington on September 4, 2018, to inform the clinic that Wiggles was not reacting to insulin, and Arlington scheduled Wiggles for a September 5, 2018, ultrasound. However, prior to the ultrasound, Zimmerman took Wiggles to IndyVet, an emergency and specialty animal hospital. IndyVet performed a variety of tests on Wiggles and stabilized her blood glucose levels. IndyVet admitted Wiggles on September 5, 2018, and discharged her on September 8, 2018.

[5] On September 10, 2018, IndyVet readmitted Wiggles for weakness, lethargy, and elevated blood glucose levels. After questioning Zimmerman, IndyVet determined Zimmerman was using U-100 syringes to dose insulin rather than U-40 syringes. This use of an incorrect syringe resulted in Wiggles receiving only 40% of the amount of insulin prescribed. Dr. Miller testified that Wiggles' symptoms were consistent with receiving an underdose of insulin. IndyVet admitted Wiggles, and her condition rapidly improved. IndyVet discharged Wiggles on September 12, 2018.

[6] Zimmerman filed a Notice of Small Claim against Arlington on January 25, 2019. In her Notice of Claim, Zimmerman alleged Arlington "let Wiggles fall through the cracks." (App. Vol. II at 11.) She asserted Arlington provided substandard care and emphasized the number of additional tests IndyVet performed on Wiggles compared to the number of tests Arlington performed. Zimmerman sought an award of $6,500.00, which represented the alleged cost of veterinary care IndyVet provided for Wiggles.

[7] The court held a bench trial on April 4, 2019. At trial, Zimmerman reiterated the allegations in her Notice of Claim and testified that an unidentified receptionist at Arlington gave Zimmerman the U-100 syringes and told her the syringes would work the same as the U-40 syringes. At the conclusion of Zimmerman's case-in-chief, Arlington moved for judgment on the evidence because Zimmerman did not put forth expert testimony regarding the veterinary standard of care. The trial court denied Arlington's motion.

[8] Dr. Miller testified that U-100 syringes are typically used in human medicine rather than veterinary medicine. Dr. Miller explained he never prescribed U-100 syringes for any of his patients. He testified Arlington does not stock U-100 syringes or sell insulin that is to be administered with a U-100 syringe. Arlington put into evidence Zimmerman's purchase history. The purchase history revealed that Zimmerman purchased U-40 syringes for Wiggles on January 7, 2018; February 20, 2018; and April 30, 2018. If Zimmerman used the syringes as directed, she would have exhausted the supply of U-40 syringes

bought in April 2018 in June 2018. However, Zimmerman's purchase history did not reveal the purchase of any U-40 syringes after April 2018.

[9] On April 11, 2019, the trial court entered findings and conclusions, rendered judgment for Zimmerman, and awarded Zimmerman $2,492.33 in damages. The trial court concluded Zimmerman failed to prove she bought the U-100 syringes at Arlington. (*Id*. at 7 ¶ 13.) Nevertheless, the court held Dr. Miller was not "sufficiently acquainted with the care and keeping of the patient," failed to adequately communicate with Zimmerman, and noted that a "conversation with Zimmerman by Arlington and its vets about administration of insulin to Wiggles may well have saved the heartache and expense of Wiggle's emergency medical care that became necessary in the first week of September 2018." (*Id*. at 8 ¶ 18.)

# Discussion and Decision

[10] "Our standard of review in small claims cases is particularly deferential in order to preserve the speedy and informal process for small claims." *Heartland Crossing Foundation, Inc. v. Dotlich*, 976 N.E.2d 760, 762 (Ind. Ct. App. 2012). We do not reweigh the evidence nor do we assess the credibility of the witnesses. *Id*. However, the burden of proof in a small claims civil lawsuit is the same as the burden in a civil action not on the small claims docket. *Harris v. Lafayette LIHTC, LP*, 85 N.E.3d 871, 876 (Ind. Ct. App. 2017). The party bearing the burden of proof must demonstrate that it is entitled to the recovery sought. *Id*. We will affirm a judgment in favor of the party bearing the burden

of proof "if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence." *Eagle Aircraft, Inc., v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013).

[11] A small claims court is not required to enter special findings. *Wynne v. Burris*, 105 N.E.3d 188, 192 (Ind. Ct. App. 2018). However, where "a small claims court elects *sua sponte* to enter findings and conclusions, they aid our review by providing us with a statement of the reasons for the trial court's decision." *Id.* at 192-193 (emphasis in original). Nonetheless, we evaluate the "evidence in the light most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. We will reverse a judgment only if the evidence leads to only one conclusion and the trial court reached the opposite conclusion." *Id.* at 193 (internal quotation marks omitted).

[12] Arlington notes that, in the medical malpractice context, and in other professional negligence contexts, expert opinion is necessary to establish that a professional's behavior fell below the standard of care when the case involves a complicated issue outside the understanding of lay persons. (*See* Appellant's Br. at 20-21) (citing, *e.g.*, *Ross v. Olson*, 825 N.E.2d 890, 893 (Ind. Ct. App. 2005) (stating "[t]o establish the applicable standard of care and to show a breach of that standard, a plaintiff [in a medical malpractice action] must generally offer expert testimony"), *trans. denied*; *Hacker v. Holland*, 570 N.E.2d 951, 953 (Ind. Ct. App. 1991) (noting Indiana law normally requires the plaintiff in a legal malpractice action to put forth expert testimony demonstrating the standard of

care by which the attorney's conduct is measured), *reh'g denied with opinion* 575 N.E.2d 675, *trans. denied*). Based thereon, Arlington asserts Zimmerman was required to provide expert testimony to prove her veterinary malpractice claim.

[13] Generally speaking, an expert witness provides testimony based on his or her "scientific, technical, or other specialized knowledge" to "help the trier of fact to understand the evidence or to determine a fact in issue." Indiana Rule of Evidence 702(a). However, as the trial court noted, pursuant to Indiana Small Claims Rule 8(A), a small claims trial "shall be informal with the sole objective [of] dispensing speedy justice between the parties according to the rules of substantive law[,] and shall not be bound by the statutory provisions or rules of practice, procedure, pleadings or evidence except provisions relating to privileged communications or offers of compromise." (Tr. at 18) (quoting S.C.R. 8(A)). That Small Claims Rule suggests expert testimony ought not be required in small claims actions.

[14] In *Martin v. Ramos*, the defendant rear-ended the plaintiff. 120 N.E.3d 244, 246-47 (Ind. Ct. App. 2019). Plaintiff visited the hospital over the ensuing few months and complained of pain in his head, neck, back, left arm, and left shoulder. *Id*. at 247. The plaintiff acknowledged pre-existing injuries, but he testified his pain increased after the accident. *Id*. The plaintiff sued the defendant in small claims court, and the trial court ruled in favor of the defendant on the basis that the plaintiff failed to prove causation because the plaintiff did not put forth expert testimony. *Id*. at 248.

On appeal, we observed that while, in the small claims setting, the method of proof may be informal and the rules of evidence relaxed, a small claims plaintiff still must meet the same burden of proof as in a civil action not on the small claims docket. *Id*. at 249. We reversed the judgment of the trial court because medical expert testimony is not always required in a personal injury action. *Id*. The plaintiff's claim was not for complex or permanent injury, and his testimony about increased pain after the accident combined with the temporal congruity between the accident and the increase in pain were competent evidence of causation. *Id*. at 252.

Similarly, the law already recognizes situations in the professional negligence context when expert testimony is superfluous. For example, if a veterinarian negligently leaves a foreign object in an animal's body post-surgery, a lay person could readily understand the veterinarian performed below the standard of care without the assistance of expert testimony. *See Ciesiolka v. Selby*, 261 N.E.2d 95, 99 (Ind. Ct. App. 1970) (holding plaintiff was not required to put forth expert testimony on issue of negligence when doctor intended to remove all Teflon mesh at conclusion of surgery but left some mesh in patient), *reh'g denied*. In the medical malpractice context, a plaintiff is not required to put forth expert testimony to rebut the medical review panel's decision if the plaintiff is pursuing a claim asserting the malpractice was so egregious a lay person could understand it without the need of expert testimony. *Thomson v. St. Joseph Regional Medical Center*, 26 N.E.3d 89, 94 (Ind. Ct. App. 2015). If a small claims plaintiff can put forth competent evidence that a professional failed to

meet the requisite standard of care without hiring an expert, the small claims court should consider it.

[17] Nonetheless, Zimmerman bore the burden of proof. A plaintiff pursuing a professional negligence claim is required to prove by a preponderance of the evidence that (1) the plaintiff employed a professional, creating a duty to the plaintiff; (2) the professional failed to exercise ordinary skill and knowledge, which constituted breach; and (3) that such negligence proximately caused (4) damages to the plaintiff. *Clary v. Lite Machs. Corp.*, 850 N.E.2d 423, 430 (Ind. Ct. App. 2006). A plaintiff must put forth evidence beyond mere speculation and supposition to satisfy the preponderance of the evidence standard. *Topp v. Leffers*, 838 N.E.2d 1027, 1033 (Ind. Ct. App. 2005), *trans. denied*. "Evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict." *Id.*

[18] Wiggles' blood glucose level spiked because Zimmerman administered insulin using an incorrect syringe. When Zimmerman took Wiggles to Arlington, her blood glucose level was elevated, and she was tired, drinking lots of water, and refusing to eat. Arlington administered insulin using a U-40 syringe, and Wiggles' blood glucose level normalized. Wiggles' behavior also improved. Wiggles' condition deteriorated whenever she was released back to Zimmerman's care and improved whenever Wiggles was hospitalized. Dr. Miller testified that administering insulin via a U-100 syringe rather than a U-40 syringe would directly cause the symptoms Wiggles experienced. He also testified that Arlington did not sell or stock U-100 syringes or insulin that

required U-100 syringes.  Further, Zimmerman admitted that she had no proof that she purchased the U-100 syringes from Arlington, and the trial court concluded that Zimmerman failed to prove she bought the U-100 syringes at Arlington.

[19]  Ultimately, the trial court found Arlington negligent and stated a "conversation with Zimmerman by Arlington and its vets about administration of insulin to Wiggles may well have saved the heartache and expense of Wiggle[s'] emergency medical care that became necessary in the first week of September 2018." (App. Vol. II at 8 ¶ 18.)  However, no evidence supports this finding. Arlington only carried and prescribed U-40 insulin syringes.  Therefore, there was no way for Arlington to know or suspect that Zimmerman was administering insulin to Wiggles with the wrong syringe.  Arlington cannot be responsible for Zimmerman's acquisition of the improper syringe elsewhere.

[20]  After Wiggles relapsed, Zimmerman took Wiggles to IndyVet.  While IndyVet ultimately determined how Zimmerman was mis-dosing Wiggles, IndyVet did so only after learning Wiggles had to be hospitalized for the same symptoms three times in a short period of time and relapsed after being released from her previous two hospitalizations.  The evidence points to only one conclusion, that Arlington did not breach its duty to Zimmerman.[1]  *See School City of Hammond*

---

[1] We do not address the issue Arlington raises regarding whether the trial court erred in taking judicial notice of American Veterinary Medical Association Policy because we find Zimmerman's failure to put forth sufficient evidence of negligence to be dispositive.

*District v. Rueth*, 71 N.E.3d 33, 46 (Ind. Ct. App. 2017) (holding plaintiff failed to put forth evidence to meet all the elements of a defamation or a blacklisting claim), *trans. denied*.

# Conclusion

The trial court's decision was contrary to law because Zimmerman failed to put forth evidence to support her claim. The evidence points only to the conclusion that Zimmerman's acquisition of inappropriate syringes that were not available at Arlington was the sole cause of Wiggles' medical issues. Accordingly, Arlington was not negligent. Consequently, we reverse and remand to the trial court with instructions to enter judgment for Arlington.

Reversed and remanded with instructions to enter judgment for Arlington.

Bailey, J., and Brown, J., concur.